# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DANNY SMITH,

     *Plaintiff,*

vs.                                 Case No. 15-1304-EFM-GLR

MILLENNIUM RAIL, INC., and MARK
BAUMGARDNER,

     *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Danny Smith was a repairman/welder for Defendant Millennium Rail, Inc.  But Smith had "bad hands."  Or more specifically, he suffered from carpal tunnel syndrome, which made it impossible for him to perform his job duties.  After taking leave to have surgery, Smith suffered a fall at work and reinjured his hands.  Hoping to keep his job, Smith sought transfer to a vacant position within the company that he believed he could perform.  But Millennium Rail awarded that job to someone else, so Smith sought leave again to have his hands surgically repaired for the second time.  Shortly after taking that leave, Smith received a letter from Millennium Rail giving him two choices: return to work immediately or resign his position. Frustrated and unable to work, Smith chose the latter and his employment with Millennium Rail ended.  Smith now brings several claims against his former employer, alleging various violations

of the Americans with Disabilities Act ("ADA")[1] and the Family and Medical Leave Act ("FMLA").  He also brings claims under Kansas state law for workers' compensation retaliation and violations related to the Occupational Safety and Health Act ("OSHA").  Smith alleges that his supervisor, Defendant Mark Baumgardner, is also liable for the FMLA violations.[2] Millennium Rail moves for summary judgment on each of Smith's claims.  For the reasons discussed below, the Court grants in part and denies in part Millennium Rail's motion.

## I.        Factual and Procedural Background[3]

Before he started working for Millennium Rail, Danny Smith developed carpal tunnel syndrome.  Smith's employment with Millennium Rail began in February 2012.  During Smith's employment, Millennium Rail was a member of the Watco family of companies.  Smith worked as a repairman/welder, repairing railcars at Millennium Rail's facility in Neodesha, Kansas. Defendant Mark Baumgardner was the plant manager at the Neodesha facility.

Millennium Rail monitors employee efficiency in railcar repairs by comparing the estimated time necessary to complete a repair to the actual time that was required.  Smith was written up for being 38.8% efficient on a repair in January 2013.  The following month, Smith took approved FMLA leave to have carpal tunnel surgery.  He returned from leave to the same job with the same pay, title, and responsibilities that he had before.

On March 26, 2013, shortly after returning from leave, Smith suffered a fall at work and reinjured his hands.  A doctor treated him with ice, a wrist brace, and ibuprofen.  Smith was

---

[1] As amended by the ADA Amendments Act of 2008 ("ADAAA").

[2] In addressing those claims, the Court will simply refer to the Defendants collectively as "Millennium Rail."

[3] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

released to return to work with "activity as tolerated with regard to use of the left hand." Millennium Rail immediately reported the injury to its workers' compensation carrier. Smith claims that he was told by a manager that Millennium Rail did not "want any reportable injuries." Accordingly, Smith asked his doctor to make sure that he would not miss any work for fear of losing his job. In December 2013, Smith was again written up for being 41% efficient. And in February 2014, he was written up a third time for being only 38% efficient on a project. He was suspended from work for three days in late February 2014.

Nearly a year after returning from FMLA leave, on March 6, 2014, Smith's workers' compensation attorney sent Millennium Rail a letter seeking coverage for surgery related to the fall he suffered back in March 2013. In an internal email sent on March 10, Baumgardner wrote that Smith was "one of these guys who never make their time" and that Millennium Rail was "working towards eliminating" Smith.

On March 14, Smith's personal doctor sent Millennium Rail a note stating that until Smith had surgery, he would be unable to use the tools essential to performing his duties. Thus, at this time it was unlikely that Smith could perform any duties of a repairman/welder. Also in March 2014, Smith and another employee, Lee Davis, applied for a switchman position with Millennium Rail. Through his employment, Smith was subject to a collective bargaining agreement. Under the collective bargaining agreement, Millennium Rail based its promotions and transfers on seniority, ability, and fitness. Millennium Rail selected Davis for the switchman position on March 20. Millennium Rail asserts that through his prior job, Davis incidentally received training for the switchman role, and therefore was the more qualified candidate.

His application for a new position unsuccessful, Smith was stuck in a job that he was physically unable to perform. On March 24, Smith submitted FMLA paperwork in order to take

leave to have surgery.  Upon submitting the paperwork, Smith was told that it looked like it was filled out correctly.  But Smith did not confirm that his paperwork was approved—he just turned it in to a receptionist "in good faith that it'd be handled professionally and properly."  The FMLA paperwork was accompanied by a doctor's certification, which stated the probable duration of Smith's leave was unknown.  The following day, Millennium Rail had Smith evaluated by another physician—Dr. Schwerdtfeger.  Dr. Schwerdtfeger notified Millennium Rail that although Smith did not release his complete medical history to her, she was unable to detect any indication of pain or weakness in his hands.  She opined that Smith could return to work without any restrictions.  From the record, it does not appear that a third medical opinion was ever sought.

Smith attempted to take his leave on April 1, 2014, moving to Oklahoma to stay with his brother because he could not afford to pay for housing while he was not working.  Millennium Rail's director of human resources was aware on April 1 that Smith had asked for FMLA leave.  But Baumgardner testified that he had no idea why "nothing was ever done about it."  There is no evidence that Millennium Rail ever made a determination about Smith's FMLA request.  Internal emails circulated at Millennium Rail regarding Smith's leave.  Shortly after Smith took leave, Jamie Wilson, Millennium Rail's compliance and claims specialist, wrote:

> The doctor that he went to, to get the [light] duty status was and is not the authorized treating physician.  Our [doctor] has stated that he is capable of doing his job duties.  Have we terminated [Smith] yet? Or what are we doing? You either need to bring him back to work or [terminate]."

The email also addressed Smith's workers' compensation request.   Wilson wrote that Millennium Rail was "disputing [Smith's workers' compensation] claim."  In another email, she stated that Millennium Rail was "fighting and [has] a good case."

On April 10, Millennium Rail sent Smith a letter instructing him to return to work on April 16 or he would voluntarily resign his employment.  Smith did not receive the letter until April 15.  Smith testified that although he did not agree with the letter, he understood that the company would consider him having voluntarily resigned his position if he did not show up to work.  Specifically, he had the following to say about the letter:

> I was not happy to get this letter.  I felt very violated.  I knew I was off on FMLA. I knew that my doctor gave me legitimate care not because I was paying her, but because it was real care.  I knew that their doctor seen me for no more than 10 minutes.  Told me and my attorney an entirely different story than what she told Watco and she had no rights to release me back to work on the same day or even the next day without looking the EMGs.  No, I was done.

Smith did not report to work or contact anyone at Millennium Rail on April 16.  Millennium Rail's paperwork, signed on May 2, reflected that Smith was involuntarily terminated for not working efficiently and missing too much work.  Both Mark Baumgardner and Shane Collins— another management level employee—claim that this paperwork was inaccurate, and that Smith was not involuntarily terminated.

Smith has still not been released from the restrictions placed on him in 2014, and he still has not had carpal tunnel surgery.  Additionally, he suffers from severe back pain that has gotten worse over time.  He has been unable to get his hands or back fixed because he lost his insurance when his employment ended.  Smith has applied for other jobs, but has not been able to find work since his employment ended.  When asked about his current efforts to find work, Smith testified:

> Well, I've kind of given up.  I haven't looked in a while.  I've always got my ear open and things, but as far as running and putting in an [application], that's a waste of my time because I'm not getting nowhere.  I can't – if I did hire on with someone, wouldn't be able to stay on with them very long in this condition.

When pressed on the timeline of when he was seeking employment, Smith noted that he "gave up," looking for work within eight months of his unemployment benefits ending, but "still kind of" looked for employment after that.[4]

Smith brings this action against Millennium Rail.  He asserts violations of the ADA and the FMLA.  He also brings two claims under Kansas common law.  For damages, Smith seeks wages and benefits, liquidated damages, compensatory damages for mental anguish and distress, punitive damages, and attorneys' fees.  Millennium Rail now moves for summary judgment on each of Smith's claims.  Millennium Rail also seeks judgment that Smith is precluded from recovering damages for wages, benefits, and back pay.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[6]  The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[7]  If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving

---

[4] Smith's testimony is very unclear as to when he actually "gave up."  He testified that it was around winter of 2014-2015, and neither party has presented any evidence to elaborate further.

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

party.[8]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]   To survive summary judgment, the non-moving party's evidence must be admissible.[10]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[11]

### III.   Analysis

#### A. FMLA Interference

Millennium Rail seeks judgment on Smith's claim that it unlawfully interfered with his rights under the FMLA.   As a threshold matter, Millennium Rail claims that it is entitled to judgment because Smith has not demonstrated actual damages.   Alternatively, Millennium Rail argues that Smith's interference claim fails on the merits.

*1.  Smith has presented sufficient evidence of actual damages because a rational juror could find that he was constructively discharged.*

"The FMLA only permits the recovery of actual monetary losses."[12]   Here, Smith alleges that he suffered actual damages in the form of lost wages as a result of his termination.   But Millennium Rail claims that Smith was not terminated; rather, he voluntarily resigned.

There are two theories under which Smith could assert that he was terminated.   There is actual discharge, which occurs when an "employer uses language or engages in conduct that

---

[8] *Id.* (citing Fed. R. Civ. P. 56(e)).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[10] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12] *Strickland v. United Parcel Serv.*, 555 F.3d 1224, 1229 (10th Cir. 2009) (citing *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1277-78 (10th Cir. 2001)).

would logically lead a prudent person to believe his tenure has been terminated."[13]  There is also constructive discharge, which occurs when an "employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit."[14]

Smith seems to argue the first theory: that he was actually discharged.  In doing so, Smith relies on Millennium Rail's internal paperwork, dated May 2, 2014, noting that Smith was involuntary terminated.  But Millennium Rail argues that its paperwork was inaccurate, and the subsequent paperwork does not change the uncontroverted fact that Smith knew the consequences of his decision not to return to work on April 16.

Regardless of Millennium Rail's internal paperwork, the uncontroverted evidence shows that in its April 10 letter, Millennium Rail did not use language that would lead a reasonably prudent person to believe his tenure had ended.  Smith himself admitted that he knew he was effectively resigning by not contacting Millennium Rail on April 16.  He was upset, and testified that he "was done." On April 16, Smith knew he was resigning from Millennium Rail.  Millennium Rail's paperwork from May does not change what happened in April.  Thus, Smith did not suffer an actual discharge.  "An actual discharge does not occur . . . when the employee chooses to resign rather than work under undesirable conditions."[15]

---

[13] *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979-80 (10th Cir. 2008) (quoting *Chertovka v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996)) (internal quotation mark omitted).

[14] *Lara v. Unified Sch. Dist. # 501*, 350 F. App'x 280, 283 (10th Cir. 2009) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005)) (internal quotation mark omitted).

[15] *Fischer*, 525 F.3d at 980.

Because Smith did not suffer an actual discharge, the Court will consider whether there is evidence that he was constructively discharged.[16]  "A constructive discharge occurs only 'when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.' "[17]  The question of whether a constructive discharge occurred is one for a jury, and can only be resolved by the Court if the evidence is susceptible to only one interpretation.[18]

In spite of Smith's failure to argue the point, the evidence shows that Millennium Rail is not entitled to judgment as a matter of law regarding the question of whether Smith was constructively discharged.  Millennium Rail chose not to award Smith the switchman position, and he testified that he was unable to work as a repairman/welder.  Therefore, the evidence could suggest that he had no choice but to take leave and move in with his brother because he was unable to earn an income until he had surgery to fix his hands.  Shortly after taking leave, Millennium Rail informed Smith that he had two choices: return to work or resign.

Giving an employee the choice to resign constitutes a constructive discharge if the choice is actually involuntary.[19]  In considering the voluntariness of an employee's choice to resign, the Court considers whether he (1) received some alternative to resignation, (2) understood the nature of his choice, (3) had a reasonable time in which to choose, and (4) was permitted to

---

[16] *Strickland*, 555 F.3d at 1228 (noting that when an employee claiming FMLA interference was not actually terminated, she must demonstrate that she was constructively discharged in order to recover damages in the form of lost wages).

[17] *Fischer*, 525 F.3d at 980 (quoting *EEOC v PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007)).

[18] *Strickland*, 555 F.3d at 1229.

[19] *See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

select the effective date of his resignation.[20]   Here, Smith's only alternative was to come back to work in a job he claims he was unable to do.   Although he understood the nature of his choice, he was not given a reasonable time to choose: he received a letter on April 15 telling him that he had to report back to work on April 16.   And he was not permitted to select the effective date of his resignation.   Given these facts, a reasonable jury could find that Smith was constructively discharged, and therefore, suffered actual damages in the form of lost wages.   Because the evidence is susceptible to more than one interpretation, Millennium Rail is not entitled to judgment as a matter of law that Smith voluntarily resigned.

*2. Millennium Rail is not entitled to summary judgment on Smith's FMLA Interference claim.*

Under the FMLA, Smith was guaranteed the substantive right of up to 12 weeks of unpaid leave for serious health conditions and reinstatement to his former position or an equivalent one upon return from that leave.[21]   An employer may not "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA]."[22]   To prevail on his FMLA interference claim, Smith must demonstrate (a) that he was entitled to FMLA leave, (b) that some adverse action by Millennium Rail interfered with his right to take that leave, and (c) that the adverse action was related to the exercise or attempted exercise of his FMLA rights.[23]   Interference is a violation of the FMLA regardless of the employer's intent.[24]

---

[20] *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000).

[21] 29 U.S.C. §§ 2612(a)(1), 2614(a).

[22] 29 U.S.C. § 2615(1)(1).

[23] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir 2006) (quoting *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).

[24] *Id.*

Unlike some of his other claims,[25] Smith's interference claim is not subject to the *McDonnell Douglas* burden-shifting analysis.[26]

   *(a) A reasonable jury could conclude that Smith was entitled to leave.*

   Millennium Rail contends that Smith has not shown that he was entitled to FMLA leave because his paperwork was inadequate.   The paperwork was inadequate, Millennium Rail contends, because it did not provide a probable duration, as required under the FMLA.   "An employee's right to FMLA leave is subject to the certification requirements of 29 U.S.C. § 2613."[27]   And § 2613(a) dictates that an employer may require that a request for leave be supported by a certification issued by a health care provider.   That certification must state "the probable duration of the condition."[28]   Because Smith's paperwork stated that the probable duration was unknown, Millennium Rail argues that his paperwork was insufficient.

   But Millennium Rail's argument ignores 29 C.F.R. § 825.305 and its application by various courts.   By failing to specify a probable duration of his condition, Smith's certification was not inadequate, it was merely incomplete.[29]   The Department of Labor explains that an employer "shall advise an employee whenever the employer finds a certification incomplete or insufficient."[30]   The Sixth Circuit has noted that the plain language of the rule imposes on an employer an affirmative duty to inform an employee that his certification is incomplete, vague,

---

[25] *See infra* Parts III.B, III.C.

[26] *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963-64 (10th Cir. 2002).

[27] *Myers v. Dolgencorp, Inc.*, 2006 WL 408242, at *6 (D. Kan. Feb. 15, 2006).

[28] 29 U.S.C. § 2613(b)(2).

[29] An incomplete form should be distinguished from an invalid form, which on its face shows that the employee is not actually entitled to leave. *See, e.g., Coffman v. Ford Motor Co.*, 447 F. App'x 691, 696 (6th Cir. 2011) (discussing the difference between an incomplete and invalid certification).

[30] 29 C.F.R. § 825.305(c).

ambiguous, or non-responsive, and give that employee a reasonable opportunity to correct any shortcomings.[31]   Without analyzing the issue, the Tenth Circuit has also noted an employer's responsibility to inform an employee of an incomplete certification.[32]

Here, there is no evidence that Millennium Rail informed Smith that his certification was incomplete.   In fact, there no evidence that Millennium Rail took any action whatsoever to resolve Smith's FMLA request.   The request seems to have languished until Smith's employment ended.   To find that Smith was not entitled to leave because of a singular omission in his FMLA paperwork would encourage employers to wait and object to such oversights only when litigation arises.   Such an outcome is undesirable and contrary to 29 C.F.R. § 825.305, which requires an employer to notify an employee of an incomplete certification.   Accordingly, the Court rejects Millennium Rail's assertion that Smith was not entitled to FMLA leave because his request for leave failed to sufficiently provide a probable duration.

Millennium Rail also argues that Smith was not entitled to leave because Dr. Schwerdtfeger determined that Smith was actually capable of working.[33]   Millennium Rail contends that "the Company learned from a health care provider that Plaintiff was able to work without any restrictions, in direct contradiction to his FMLA request."   True enough.   But the law provides for just such a scenario.   Under the FMLA, an employer may require a second opinion concerning information included in a certification.[34]   Millennium Rail apparently did so

---

[31] *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 155 (6th Cir. 2015); *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007).

[32] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1007 (10th Cir. 2011).

[33] Interestingly, in its ADA arguments, Millennium Rail argues the exact opposite—that it could not have reasonably accommodated Smith because he was utterly incapable of doing any kind of work.

[34] 29 U.S.C. § 2613(c).

by sending Smith to see Dr. Schwerdtfeger.[35]   When the second opinion differs from the certification—as Dr. Schwerdtfeger's did—the FMLA provides in relevant part:

> In any case in which the second opinion . . . differs from the opinion of the original certification . . . the employer may require, at the expense of the employer, that the employee obtain the opinion of a third healthcare designated or approved jointly by the employer and the employee.[36]

There was no third opinion in this case, but Millennium Rail argues it was not required to seek one.  This is correct: the language of the statute plainly states that the employer "may" require— not that it "shall" require—a third opinion.[37]   Although not required, the third opinion would have been "final and binding on the employer and the employee."[38]   Without a third opinion, the Court is left with two doctors' opinions: one saying that Smith could not work, and thus, was entitled to leave, and another opinion saying the opposite.  Faced with these conflicting opinions, and in the absence of a third, binding opinion, reasonable jurors could differ as to the question of whether Smith was entitled to FMLA leave.  And even if Millennium Rail truly believed Dr. Schwerdtfeger's opinion, it would still be liable for interference if Smith was in fact entitled to leave.[39]

Because Millennium Rail failed to notify Smith that his certification lacked a probable duration, it cannot now complain that his FMLA paperwork was incomplete.  Furthermore, a reasonable jury could find that Smith was in fact entitled to FMLA leave.  Accordingly,

---

[35] From the filings, it is unclear whether Millennium Rail sent Smith to Dr. Schwerdtfeger in response to his FMLA request, his workers' compensation request, both, or neither.

[36] 29 U.S.C. § 2613(d)(1).

[37] *Rhoads v. FDIC*, 257 F.3d 373, 385-86 (4th Cir. 2001).

[38] 29 U.S.C. § 2613(d)(2).

[39] *Metzler*, 464 F.3d at 1180 (noting that an interference with FMLA rights is a violation regardless of the employer's intent).

Millennium Rail's argument that it is not liable for FMLA interference because Smith was not entitled to leave fails.

*(b) Smith has produced sufficient evidence of adverse employment action.*

Millennium Rail next argues that Smith cannot show that adverse action interfered with his right to take leave. Millennium Rail contends that it merely asked Smith to return to work, and he chose to resign instead. But constructive discharge would constitute adverse action, and the Court has already concluded that Millennium Rail is not entitled to judgment on that issue.

*(c) Millennium Rail's adverse action was closely related to Smith's attempt to exercise his FMLA rights.*

Smith has also produced sufficient evidence to survive summary judgment on the third element of his FMLA interference claim—that the adverse action related to the exercise of his FMLA rights. Millennium Rail admits as much: it sent Smith the letter because he had taken leave when it felt that he was actually capable of working. But even if Millennium Rail felt that Smith could work, it still improperly interfered with his right to FMLA leave if he was in fact entitled to such leave. If that is the case, then Millennium Rail's letter may have constituted adverse action taken as a direct result of Smith's attempt to exercise his FMLA rights.

A rational juror could find that Smith (a) was entitled to leave under the FMLA, and (b) was constructively discharged (c) as a direct result of his attempt to take his FMLA leave. Accordingly, the Court denies Millennium Rail's motion for summary judgment on Smith's FMLA interference claim.

**B. ADA: Failure to Accommodate**

The ADA provides:

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[40]

The ADA specifically notes that discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee."[41]   Smith identifies two accommodations that Millennium Rail failed to provide: leave to obtain surgery and reassignment to a vacant position.

When considering ADA discrimination claims—including failure to accommodate—on summary judgment, the Court applies the *McDonnell Douglas* burden-shifting approach.[42] Smith bears the initial burden of establishing a prima facie case of discrimination.[43]   If Smith makes such a showing, the burden shifts to Millennium Rail to articulate a legitimate, non-discriminatory reason for its conduct.[44]   If Millennium Rail can articulate such a reason, the burden shifts back to Smith, who is tasked with showing that Millennium Rail's justification for its conduct is actually a pretext designed to mask discrimination.[45]   If there remains genuine evidence supporting each element of Smith's prima facie case, and, if need be, disputing Millennium Rail's rebuttal, then summary judgment should be denied.[46]

---

[40] 42 U.S.C. § 12112(a).

[41] 42 U.S.C. § 12112(b)(5)(A).

[42] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306-07 (10th Cir. 2017); *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[43] *Carter*, 662 F.3d at 1141.

[44] *Id.*

[45] *Id.*

[46] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999).

Smith is alleging that Millennium Rail failed to accommodate his disability in two different ways, and the elements for each of these theories are slightly different. Thus, the Court will consider them separately.

*1. Failure to accommodate by offering reassignment to a vacant position.*

Smith contends that Millennium Rail could have accommodated his disability by reassigning him to the vacant switchman position. To make a prima facie case for failure to accommodate by offering reassignment to a vacant position, an employee must make a showing that:

> (1) The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;
>
> (2) The preferred option of accommodation within the employee's existing job cannot reasonably be accomplished;
>
> (3) The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;
>
> (4) The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and
>
> (5) The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.[47]

Smith has easily established the first three elements. He maintains that his carpal tunnel syndrome was disabling, and there is no dispute that Millennium Rail was aware of his

---

[47] *Iverson v. City of Shawnee*, 332 F. App'x 501, 503 (10th Cir. 2009) (citing *Midland Brake*, 180 F.3d at 1179).

condition.  While accommodation within Smith's position arguably could have been reasonably accomplished with leave to obtain surgery, the record shows that Millennium Rail was unwilling to provide such an accommodation.  And Smith specifically requested reassignment to the vacant switchman position.

As to the fourth element, Millennium Rail argues that Smith has not shown that he was qualified to perform the duties of a switchman.  But there is some dispute as to what was physically required of a switchman.  Millennium Rail asserts that a large part of a switchman's duties includes the use of levers—at times with both hands.  Relevant to Smith's disability, Millennium Rail asserts that a switchman is required to exert up to 125 pounds of force occasionally, 100 pounds of force frequently, and 75 pounds of force regularly.  Smith disagrees with Millennium Rail's characterization of a switchman's duties, calling them "Herculean."  In response, he submitted Watco job listings for switchman positions in Alabama and Louisiana.  Those positions required only seldom or occasional lifting of up to 75 pounds, and frequent carrying of up to 100 pounds.  The listings also called for frequent reaching, grasping, and hand control operation, as well as occasional fine finger manipulation.

In addition to the dispute as to what was actually required of a switchman, there is also a dispute as to Smith's physical capabilities.  Millennium Rail cites Smith's deposition to argue that Smith was entirely unable to work, and thus, was not qualified to work as a switchman, regardless of which physical requirements apply.  But Smith's deposition does not actually support Millennium Rail's claim.  Smith testified that he could have performed the duties of a switchman.  He testified that he had checked with his doctor before applying for the position and that in certain circumstances, he could have pushed, pulled, or lifted up to 100 pounds.  Millennium Rail's claim that "in light of Plaintiff's testimony that he cannot work, Plaintiff has

obviously not identified any job at Millennium Rail that he could perform" is beyond incorrect—it is dishonest.  There is a factual dispute regarding the actual requirements of the switchman position.  In addition, reasonable jurors could differ as to whether Smith was physically capable of performing those requirements.  Therefore, Smith has established the fourth element of his prima facie case of failure to accommodate by offering reassignment.  He has also established the fifth element: the switchman position was given to someone else; leaving Smith in a position he could not perform.  Ultimately, Smith moved to Oklahoma and lost his job because he was unable to work.

The burden now shifts to Millennium Rail to articulate a legitimate, non-discriminatory reason for its conduct.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.' "[48]  Millennium Rail claims that it simply awarded the switchman position to the more qualified candidate.  Millennium Rail contends that it selected Lee Davis, and not Smith, for the switchman position because through his prior job, Davis had experience relevant to the switchman position.  Smith and Davis were subject to a collective bargaining agreement that set forth criteria by which employees are selected for promotional opportunities.  Employment decisions are based on seniority, ability, and fitness.  Although Smith was more senior than Davis, Millennium Rail asserts that the most qualified candidate will be awarded a position, and seniority is only a factor if two applicants have the same qualifications.[49]  Davis was a blaster—one who operates a hose on the inside and outside of rail cars.  According to

---

[48] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

[49] Smith attempts to controvert this assertion, noting that the collective bargaining agreement does not mention experience; rather, it only identifies seniority, ability, and fitness as considerations for filling a vacancy. But experience is obviously a factor in considering ability and fitness for a position.

Millennium Rail, blasters "do a lot of switching" and thus, Davis already had experience relevant to the position of a switchman.   Therefore, Millennium Rail argues that Davis was more qualified to be a switchman, and thus, was awarded the position instead of Smith.

Because Millennium Rail has articulated a legitimate explanation for its conduct, the burden shifts back to Smith to present evidence of pretext.  When assessing a claim of pretext, the Court examines the facts as they appear to the person making the employment decision.[50] The Court may not second guess Millennium Rail's business judgment; rather, the question is whether the reason articulated by Millennium Rail is the actual reason it sent the letter to Smith.[51]  "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[52]  Smith may create a genuine issue of fact merely by discrediting Millennium Rail's legitimate, non-discriminatory reason; however, "the burden remains on [Smith] to show that each reason given by [Millennium Rail] is unworthy of credence."[53]  Ultimately, Smith is required to show that Millennium Rail's legitimate explanation is "so implausible, incoherent, or internally contradictory" that it must have made its decision on some other basis.[54]  Given this framework, Smith falls woefully short.

---

[50] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1260-61 (10th Cir. 2001) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)).

[51] *Id.* at 1261

[52] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation marks and alterations omitted).

[53] *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1312 (10th Cir. 2005).

[54] *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 691 (10th Cir. 2008) (quoting *Rivera*, 365 F.3d at 925).

"[O]nce an employer has posited a legitimate, non-discriminatory reason for [its conduct], the employee may access many evidentiary tools to *expose its employer's stated reason* as pretext."[55]   Regarding Millennium Rail's failure to reassign him, Smith declares that "pretext abounds" without even addressing his employer's stated reason.[56]   Millennium Rail asserts that through his employment as a blaster, Davis incidentally gained experience relevant to the switchman position, and thus, was the more qualified candidate.  In support of this assertion, Millennium Rail cites the deposition of Shane Collins—one of its management level employees. Collins testified that blasters "do a lot of switching back there in blast . . . so [Davis] already had experience of switching cars already. Already trained, the blasters are, because they switch their own cars in their department."   Smith attempts to controvert this claim by citing the same deposition, in which Collins was asked how long Davis had been training on switchman job duties, and responded "I have no idea.   However long he would have been in the blast department."[57]

Although he claims to controvert Millennium Rail's justification, Smith fails to advance evidence that actually contradicts or undermines Collins' testimony.  His statements are entirely consistent, and no evidence cited by Smith challenges Millennium Rail's assertion that blasters are qualified to be switchmen.  Nothing cited by Smith suggests that Millennium Rail did not

---

[55] *Dewitt*, 845 F.3d at 1311.

[56] Smith also argues that Millennium Rail failed to engage in the interactive process as required.  But Smith also fails to elaborate beyond this bare assertion.  An employer's responsibilities within the interactive process are to determine whether another job exists for which the employee might be qualified. *Midland Brake*, 180 F.3d at 1172. Here, Smith became aware of the switchman position and applied for it.  Given those facts, it is unclear how Millennium Rail failed to engage in the interactive process.

[57] Collins said he did not know how long Davis had been trained; he did not say that Davis had not been trained.

actually believe Davis was more qualified.   Millennium Rail's legitimate explanation for its conduct is completely uncontested.

In asserting pretext, an employee must discredit the specific justification advanced by the employer.[58]   In other words, Smith must address Millennium Rail's justification head on.[59] Pretext can be shown in many ways.   Smith could try to demonstrate pretext with "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons."[60]   Or Smith could attempt to show pretext with "direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated."[61]   But Smith cannot show pretext with one conclusory paragraph in which he asserts that "pretext abounds."   Because the record is entirely devoid of evidence that Millennium Rail did not actually believe Davis was the more qualified candidate, Smith fails to demonstrate pretext.   Accordingly, Millennium Rail is entitled to summary judgment on Smith's claim for failure to accommodate by offering reassignment.

*2. Failure to accommodate by granting leave.*

Smith also contends that Millennium Rail failed to accommodate him by granting him leave.   Generally, to demonstrate a prima facie case for failure to accommodate under the ADA

---

[58] *Colo. Judicial Dept.*, 427 F.3d at 1309 ("In the most straightforward cases, the plaintiff's showing of pretext *completely displaces the employer's legitimate, non-discriminatory explanation*, leaving no explanation for the decision.") (emphasis added).

[59] *Id.* at 1312 ("The [employer] has offered a legitimate, nondiscriminatory reason for its decision— [another employee] was better qualified for the position.   Because she has not presented evidence to show that *this reason* is mere pretext, [the Plaintiff's] successful attack on [the employer's] initial explanation is not enough to create a genuine issue of fact.") (emphasis added).

[60] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)) (internal quotation marks omitted).

[61] *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).

Smith must show that (1) he is a qualified individual with a disability, (2) Millennium Rail was aware of his disability, and (3) Millennium Rail failed to reasonably accommodate the disability.[62]  Millennium Rail argues that Smith fails to show the first and third elements of his prima facie case.

In determining whether Smith was a qualified individual with a disability,[63] the Court looks at two criteria.  First, the Court must determine whether Smith's impairment prevented him from performing the essential functions of the job he holds or desires.[64]  If so, the Court must then determine whether he might have nevertheless been able to perform those functions if Millennium Rail had provided him with a reasonable accommodation.[65]

Smith was a repairman/welder.  A jury could find that Smith was unable to perform the essential functions of that job.  He asserts that he was unable to use a hammer, grinder, or power tools, and concedes that given those restrictions, he was unable to do any sort of repair work. Because Smith's impairment could have kept him from performing the essential functions of a repairman/welder, the Court asks whether he would have nevertheless been able to perform those functions with a reasonable accommodation.  As noted above, Smith identifies two potential accommodations that Millennium Rail refused to provide: (1) leave to have carpal tunnel surgery, or (2) reassignment to the vacant switchman position within the company.

Although Smith was unable to work as a repairman/welder, he still would be considered a qualified individual if he could have performed the essential functions of that job with a

---

[62] *Chan v. Sprint Corp.*, 351 F. Supp. 2d 1197, 1206 (D. Kan. 2005).

[63] Millennium Rail is not seeking judgment as a matter of law that Smith was not in fact disabled.

[64] *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan.*, 691 F.3d 1211, 1216 (10th Cir. 2012); *Midland Brake, Inc.*, 180 F.3d at 1161.

[65] *Robert*, 691 F.3d at 1216.

reasonable accommodation.   Smith contends that leave to have his hands surgically repaired would constitute such an accommodation.  "It is well settled that a request for leave may lead to a 'reasonable' accommodation—such a request may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job (i.e. attend work) in the future."[66]   However, Millennium Rail argues that in this case, leave was not a reasonable accommodation because Smith requested leave for an indefinite amount of time.  Millennium Rail relies on the fact that when Smith requested FMLA leave for his second surgery, he indicated that he did not know when he would be able to return to work. And the law is settled that a request for indefinite leave is not a reasonable accommodation under the ADA.[67]

But on summary judgment, the Court must view the facts in the light most favorable to Smith.  Although Smith's leave request indicated that he did not know when he would return, it is uncontroverted that he was specifically requesting FMLA leave.  Under the FMLA, Smith was entitled to no more than 12 weeks of leave.[68]  Thus, viewed in Smith's favor, the facts show that he was requesting leave for 12 weeks at most when he submitted his FMLA paperwork.  Such a request is reasonable under the ADA.[69]  And Smith asserts that he could have returned to work as a repairman/welder had he been allowed to take leave to obtain the surgery.   Consequently,

---

[66] *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

[67] *See Lara v. State Farm Fire & Cas. Co.*, 121 F. App'x 796, 801 (10th Cir. 2005); *Boykin v. ATC/VanCom of Colo., L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001).

[68] 29 U.S.C. § 2612(a)(1).

[69] *Diffee Ford-Lincoln-Mercury,* 298 F.3d at 967 (10th Cir. 2002) ("Because [the employee] had requested and taken no more leave than the FMLA already required that she be given, we cannot conclude that the length of time was unreasonable.").

Smith has made a prima facie case that he was a qualified individual under the ADA with evidence that he could have performed his job had he been reasonably accommodated. Furthermore, Smith could also show that he was a qualified individual if he was capable of performing the essential functions of the job he desired—that of a switchman.[70]  And the Court has already determined that a jury could find that Smith was capable of performing the duties of a switchman.[71]

Smith has presented evidence suggesting that he could have performed the duties of a repairman/welder if he had been allowed to take FMLA leave.  He has also presented evidence demonstrating that he could have performed the duties of a switchman.  Accordingly, Smith has made a prima facie case that he was a qualified individual under the ADA.

A reasonable jury could conclude that Smith was a qualified individual, and Millennium Rail does not contend that it was unaware of Smith's disability.  Therefore, Smith's prima facie case of failure to accommodate by granting leave claim turns on the third element: whether Millennium Rail failed to allow Smith to take leave.  The evidence shows that Smith requested leave, but Millennium Rail never acted on that request.  Smith took leave, and shortly after taking that leave was informed by Millennium Rail that he had two choices: return to work immediately or resign his position.  Smith chose the latter, and as noted above, a jury could find that Smith had been constructively discharged.  Accordingly, Smith has demonstrated a prima facie case that Millennium Rail failed to accommodate his disability by refusing to grant him leave.

---

[70] *Midland Brake*, 180 F.3d at 1161 ("[A] 'qualified individual with a disability' includes a disabled employee who desires and can perform with or without reasonable accommodation an available reassignment job within the company . . . .").

[71] *See supra* Part III.B.1.

Once again, the burden shifts to Millennium Rail to articulate a legitimate, non-discriminatory reason for its conduct. Millennium Rail responded to Smith's attempted leave with a letter requiring him to immediately return to work or resign his position. Millennium Rail contends that it did not send Smith the letter to deny him an accommodation. Rather, it claims that it sent the letter because it believed Dr. Schwerdtfeger's opinion that Smith was actually capable of working.

Because Millennium Rail has articulated a legitimate explanation for its conduct, the burden shifts back to Smith to present evidence of pretext. Millennium Rail's justifies its April 10 letter by arguing that it believed Smith was capable of working. According to Millennium Rail, it simply wanted its capable employee back at work. But based on the evidence, a reasonable jury could determine that this explanation is mere pretext. It is well documented that Millennium Rail was unsatisfied with the quality of Smith's work: he had been written up for inefficient work several times and was even suspended on one occasion. In March 2014, Baumgardner communicated that Smith was "one of these guys who never make their time" and that Millennium Rail was "working towards eliminating" him. And shortly after his employment ended, Millennium Rail's paperwork stated that he had in fact been involuntary terminated. Even though that paperwork does not establish that Smith suffered actual termination, it may suggest that termination was actually Millennium Rail's desired outcome in sending the April 10 letter. In other words, a reasonable jury could find that Millennium Rail did not actually believe that Smith was capable of working, and did not actually want him to report back to work when it

sent him the April 10 letter.[72]   Hence, Smith has made a prima facie case that Millennium Rail failed to reasonably accommodate his disability by allowing him to take FMLA leave to obtain surgery.   Millennium Rail has offered a non-discriminatory justification for its conduct, but a reasonable jury could determine that explanation is pretext.

Consequently, Smith's claim that Millennium Rail failed to accommodate his disability by denying him leave to have surgery survives Millennium Rail's motion for summary judgment. But Smith cannot go forward on the theory that Millennium Rail also failed to accommodate him by not assigning him to the vacant switchman position; Millennium Rail is entitled to summary judgment on that claim.

## C. ADA Termination

In addition to failure to accommodate, Smith also contends that he was unlawfully terminated in violation of the ADA.   "The ADA prohibits employers from discriminating against 'a qualified individual on the basis of disability in regard to . . . discharge of employees.' "[73]   As with Smith's failure to accommodate claim, the Court applies the *McDonnell Douglas* burden-shifting approach.[74]   The Court begins its analysis, then, by determining whether Smith has established a prima facie case of ADA termination.

To make a prima facie case, Smith must show that (1) he is a disabled person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) Millennium Rail terminated his

---

[72] *Rivera*, 365 F.3d at 924-25 ("The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.") (internal quotation marks and alterations omitted).

[73] *Dewitt*, 845 F.3d at 1308 (quoting 42 U.S.C. § 12112(a)).

[74] *Id.* (applying the *McDonnell Douglas* framework to a ADA termination claim).

employment under circumstances giving rise to an inference that the termination was based on his disability.[75]

Smith has presented evidence that he was disabled, and would have been qualified to work as a repairman/welder had he been provided the reasonable accommodation of leave to obtain surgery.  As to the third element, to demonstrate discrimination, an employee "generally must show that he has suffered an 'adverse employment action because of the disability.' "[76] Smith has obviously shown adverse employment action—as noted above, there is evidence suggesting that he was constructively discharged.  But was there a causal connection between Smith's disability and the constructive discharge?  The evidence fails to give rise to such an inference.

Smith must "present some affirmative evidence that disability was a determining factor in the employer's decision."[77]  Smith has come forth with evidence suggesting that he was terminated because he sought an accommodation.  Reflecting his alternative claims, then, a reasonable jury could find that Smith's termination constituted both a failure to accommodate as well as retaliation for protected activity.[78]  But a reasonable jury could not also conclude that Smith was terminated because of the sole fact that he was disabled.

Where there is no direct evidence of causation, an employee can show that he was terminated because of his disability by relying on temporal proximity, such as showing adverse

---

[75] *Morgan*, 108 F.3d at 1323 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 361 n.6 (10th Cir. 1995)).

[76] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (quoting *Mathews v. Denver Post*, 263 F.3d 1164, 167 (10th Cir. 2001)).

[77] *Morgan*, 108 F.3d at 1323-24.

[78] *See infra* Part III.C.

employment action shortly after a disability is announced.[79]  Here, Smith's alleged disability is carpal tunnel syndrome.  And the record shows that he had taken leave for carpal tunnel surgery once before, in February 2013.  Thus, Millennium Rail had been aware of Smith's disability for quite some time before his employment ended in April 2014.  Unable to rely on temporal proximity, Smith must point to some other evidence suggesting that Millennium Rail terminated him because he had carpal tunnel syndrome.  No such evidence exists.  The evidence suggests that Millennium Rail might have fired Smith in retaliation for protected activity.  Or it might have fired him because it did not want to accommodate his disability.  But nothing in the record suggests that Smith suffered adverse employment action simply because he suffered from carpal tunnel syndrome.  Millennium Rail knew that Smith had carpal tunnel syndrome for more than a year without taking adverse action.  As such, Smith fails to make a prima facie case for ADA termination, and Millennium Rail is entitled to judgment on that claim.

### D. FMLA, ADA, and Workers' Compensation Retaliation

Smith brings retaliation claims under both the ADA and the FMLA.  He also brings a state law claim for workers' compensation retaliation.  The elements for each of these claims are similar, and they are all analyzed under the *McDonnell Douglas* framework.[80]  And as alleged by Smith, his various retaliation claims arise from the same or related events. Accordingly, the Court will consider the retaliation claims together.

---

[79] *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 149 (10th Cir. 1999) (finding a prima facie case for ADA discrimination where plaintiff suffered adverse employment action "soon after Plaintiff announced his disability and requested an accommodation.").

[80] *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207-08 (10th Cir. 2007); *Metzler*, 464 F.3d at 1170; *Satterlee v. Allen Press, Inc.*, 2011 WL 4031558, at *4-5 (Kan. Ct. App. Sep. 9, 2011) (unpublished table opinion) (citing *Rebarchek v. Famers Co-op Elevator & Mercantile Ass'n*, 272 Kan. 546, 554, 35 P.3d 892, 899 (2001)).

*1. Prima facie case of ADA and FMLA retaliation.*

To establish a prima facie case for retaliation under the FMLA or ADA, Smith must show that (1) he engaged in a protected activity under the applicable statute; (2) a reasonable employee would have found Millennium Rail's conduct materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[81]

The Court turns now to the first element of the prima facie case: that Smith engaged in a protected activity.  A request for a reasonable accommodation is a protected activity under the ADA.[82]  And the Court has already noted that FMLA leave is a reasonable accommodation.  So by requesting FMLA leave, Smith was taking action that is protected by both the ADA and the FMLA.  Accordingly, Smith has demonstrated the first element of his prima facie cases of retaliation.

Regarding the second element, Millennium Rail contends that Smith did not suffer materially adverse employment action.  But the argument once again is that Smith voluntarily resigned.  The Court has already held that the evidence suggests that Smith may have been constructively discharged.  Thus, he makes a prima facie showing of adverse employment action.

As to the third element, Smith "must show a causal connection between [his] protected activity . . . and [Millennium Rail's] decision to terminate [his] employment."[83]  Temporal proximity between the protected conduct and the termination is relevant to this inquiry; however, Smith can rely on temporal proximity alone only if the termination is very closely connected to

---

[81] *Proctor*, 502 F.3d at 1208; *Metzler*, 464 F.3d at 1171.

[82] *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1194 (10th Cir. 2007).

[83] *Metzler*, 464 F.3d at 1171.

the protected activity.[84]   Again, for purposes of his retaliation claim, Smith's submission of FMLA paperwork was protected activity under both the FMLA and the ADA.  Smith submitted his FMLA paperwork on March 24 and took the leave on April 1.  He received Millennium Rail's ultimatum on April 15 and resigned—or was constructively discharged—the following day.  Smith's employment ended 23 days after he submitted his paperwork requesting leave, and only 15 days after his leave actually began.

In considering causation, the Tenth Circuit has considered a termination "very closely connected in time" where an employee was fired between four and six weeks after engaging in protected conduct.[85]  Because Smith's employment ended less than four weeks after he requested FMLA leave, and just over two weeks after he actually took that leave, he has demonstrated a prima facie case of causation, and thus, a prima facie case of retaliation.

*2. Prima facie case of workers' compensation retaliation.*

Although they are similar, the elements of a prima facie case for workers' compensation retaliation vary slightly from FMLA and ADA retaliation.  Smith must demonstrate that (1) he filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) Millennium Rail had knowledge of the injury; (3) Millennium Rail terminated his employment; and (4) a causal connection existed between the protected activity or injury and the termination.[86]

Smith has shown that he suffered a fall in March 2013 and sought workers' compensation benefits.  It is also uncontroverted that Millennium Rail was aware of his injury and reported it to

---

[84] *Id.* (citations omitted).

[85] *Id.* at 1171-72.

[86] *Id.*

its workers' compensation carrier.  Emails show that Millennium Rail was also aware of Smith's subsequent workers' compensation claim.  In addition, it has been established that Smith has produced evidence of constructive discharge.  So the Court turns to the fourth element: a causal connection between Smith's workers' compensation claim and the alleged constructive discharge.

As with his FMLA and ADA retaliation claims, "[p]roximity in time between the claim and discharge is a typical beginning point for proof of a causal connection" in considering workers' compensation retaliation claim under Kansas law.[87]  Smith suffered the injury in March 2013, but did not file his claim until March 6 of the following year.  Smith's employment ended a little over a month after he filed the claim.  Such a time frame between a claim and termination, alone, has been found to establish a prima facie case of a causal connection.[88]  Thus, Smith has established a prima facie case of workers' compensation retaliation.

*3. Millennium Rail provides one, non-retaliatory explanation for its conduct.*

Because Smith has made a prima facie case of various forms of retaliation, the burden now shifts to Millennium Rail to articulate a non-retaliatory justification for its actions.  The alleged adverse action—termination—is the same for each of Smith's retaliation claims.  Therefore, Millennium Rail offers the same non-retaliatory justification for each claim—the same justification it advanced in its failure to accommodate claim—that it believed Dr. Schwerdtfeger's opinion that Smith was actually capable of working, and wanted its employee back.  The burden then shifts back to Smith to demonstrate pretext.

---

[87] *Rebarchek*, 272 Kan. at 555, 35 P.3d at 899.

[88] *Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1203 (D. Kan. 2002) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

*4. Smith has presented sufficient evidence of pretext.*

Because Millennium Rail's non-retaliatory justification is the same justification it advanced in response to Smith's failure to accommodate claim, the pretext analysis is the same.[89] Given evidence of Millennium Rail's stated intention of terminating Smith, its dissatisfaction with his work, and the fact that Millennium Rail's internal paperwork reflected that Smith had been terminated, a reasonable jury could find that Millennium Rail did not actually believe that Smith was capable of working and did not want him to return to work when it sent the April 10 letter.

Accordingly, Millennium Rail is not entitled to judgment on Smith's claims of retaliation under the ADA or the FMLA. Nor is Millennium Rail entitled to judgment on Smith's state law claim of workers' compensation retaliation.

**E. Smith's Other State Law Claim**

Aside from his workers' compensation claim, Smith brings another state law claim. This state law claim relates to the federal OSHA. He claims that he was discriminated against for reporting a workplace injury, in violation of OSHA. And he seeks a remedy under Kansas common law for Millennium Rail's alleged OSHA violation. But Smith's claim is incompatible with OSHA-related relief provided for under Kansas law.

In *Flenker v. Willamette Industries, Inc.*,[90] the Kansas Supreme Court held that an employee could bring a state law claim for whistleblower retaliation if he was terminated for reporting an OSHA violation, because that statute's federal remedy may not be adequate.[91]

---

[89] *See supra* Part III.B.2.

[90] 266 Kan. 198, 967 P.3d 295 (1998).

[91] *Id.* at 210, 967 P.3d at 303.

Kansas's whistleblower exception to the at-will employment doctrine creates a private right of action for the "termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials."[92]  To maintain such an action, Smith must show that (1) a reasonably prudent person would have concluded that Millennium Rail was engaged in activities in violation of OSHA; (2) Smith reported such violations out of a good faith concern over the violations; (3) Millennium Rail had knowledge of Smith's reporting such violations before terminating him; and (4) Smith was discharged in retaliation for making the report.[93]  This claim is also subject to a burden-shifting analysis.[94]  Accordingly, the Court begins with Smith's prima facie case.

Assuming arguendo that Millennium Rail did commit OSHA violations, Smith fails to demonstrate the second element: that he reported any OSHA violations either internally or externally.  Smith relies on *Flenker v. Willamette Industries, Inc.*[95] in asserting his OSHA-related claim.  But *Flenker* dealt exclusively with the whistleblower exception.[96]  And as the name suggests, one cannot bring such an action without alleging that he was in fact a whistleblower.  Here, no such evidence exists.  Smith does not allege that he filed a complaint, internally or externally, about perceived OSHA violations.  *Flenker* did not hold that an individual can usurp the Secretary of Labor's authority and enforce OSHA in state court; rather, *Flenker* only

---

[92] *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685, 689-90 (1988).

[93] *Id*. at 900, 752 P.2d at 690.

[94] *Shaw v. Sw. Kan. Groundwater Mgmt. Dist. Three*, 42 Kan. App. 2d 994, 999, 219 P.3d 857, 862 (2009).

[95] 266 Kan. 168, 967 P.3d 295 (1998).

[96] *Id.* at 200, 967 P.3d at 298.

addresses situations in which an employee is fired for reporting an OSHA violation.[97]   Those

facts are not present here.

Smith could only recover under state law on an OSHA-related claim if he were alleging

that he was terminated for reported such a violation.  But that is not the case.  Because he is not a

whistleblower, Smith obviously cannot recover under the whistleblower exception to Kansas's

at-will employment doctrine.

### F. Smith's Claims for Economic Damages

Millennium Rail also moves for judgment on Smith's claims for economic damages.  In

light of Smith's testimony that he has not received surgery, never been released to work, and

unable to perform the essential functions of his job since March 2014, Millennium Rail contends

that Smith is not entitled to damages for lost wages or benefits.  In addition, Millennium Rail

argues that Smith's testimony that he has "given up" looking for work forecloses any claims for

back pay because he failed to mitigate his damages.  Astonishingly, Smith failed to address these

arguments in his response to Millennium Rail's motion.

Despite the fact that Millennium Rail's argument is entirely unopposed, the Court

nonetheless will not grant judgment on the issue of damages.  Millennium Rail bears the burden

of showing a failure to mitigate.[98]   To meet that burden, Millennium Rail must show that (1) the

damage suffered by Smith could have been avoided, i.e., that there were suitable positions

available that he could have discovered and was qualified for; and (2) that Smith failed to use

---

[97] *Id.*

[98] *Brooks v. Via Christi Reg'l Med. Ctr.*, 2010 WL 446523, at *13 (D. Kan. Feb. 4, 2010) (citing *United States v. Lee Way Motor Freight*, 625 F.2d 918, 937 (10th Cir. 1979)).

reasonable care and diligence in seeking such a position.[99]   Here, Millennium Rail relies on

Smith's statements about "giving up" the job search, failing to obtain surgery, and presently

being unable to work.   But Millennium Rail presents no evidence showing the availability of

suitable positions for which Smith was qualified.

Furthermore, the awards of damages such as these "are equitable decisions ultimately

committed to the discretion of the Court."[100]   Ultimately, the Court "may consider all evidence

presented at trial in formulating the proper award."[101]   Millennium Rail seeks to preclude Smith

from recovering any economic damages based on excerpts of a deposition taken in March 2016.

The cited evidence fails to clearly illustrate the timeline or specifics of Smith's job search (or

lack thereof).   As other courts have done in similar situations, this Court will not preclude the

recovery of damages based on such inconclusive evidence.[102]   Millennium Rail is not entitled to

judgment on the issue of damages.

### IV. Conclusion

For the reasons discussed above, the Court grants Millennium Rail's motion for summary

judgment on Smith's claims of ADA termination and failure to accommodate by offering

reassignment.   The Court also grants Millennium Rail's motion for summary judgment on

Smith's OSHA-related state law claim.   But Millennium Rail is not entitled to judgment on

Smith's claims of FMLA interference or failure to accommodate by granting leave under the

ADA.   In addition, the Court denies Millennium Rail's motion for summary judgment on

---

[99] *EEOC v. Sandia*, 639 F.2d 600, 627 (10th Cir. 1980).

[100] *Jurczyk v. Coxcom, LLC*, 191 F. Supp. 3d 1256, 1270 (N.D. Okla. 2016).

[101] *Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999).

[102] *See Jurczyk*, 191 F. Supp. 3d at 1270-71; *Brooks*, 2010 WL 446523, at *13.

Smith's claims of retaliation in violation of the FMLA, ADA, or Kansas common law.  Lastly, the Court denies Millennium Rail's motion for summary judgment on Smith's claims for economic damages.

**IT IS THEREFORE ORDERED** that Mark Baumgardner and Millennium Rail's Motion for Summary Judgment (Doc. 41) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED**.

Dated this 15th day of March, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE